FILED
SUPERIOR COURT
OF GUAM

2024 OCT 29 PM 1: 44

CLERK OF COURT

BY:_____

# IN THE SUPERIOR COURT OF GUAM

| | |
|---|---|
| **EAGLE LAND HOLDINGS, LLC,** | **Civil Case No. CV0242-24** |
| Plaintiff, | |
| vs. | **DECISION AND ORDER RE: GOVERNMENTAL IMMUNITY** |
| **SCIENCE IS FUN AND AWESOME LEARNING ACADEMY CHARTER SCHOOL,** | |
| Defendant. | |

This matter came before the Honorable Jonathan R. Quan on July 31, 2024, for an evidentiary hearing on Defendant Science is Fun and Awesome Learning Academy Charter School's ("SIFA") governmental immunity defense. At the hearing, Attorney Michael F. Phillips appeared on behalf of SIFA, and Attorney Jon R. Ramos appeared on behalf of Plaintiff Eagle Land Holdings, LLC. Having duly considered the parties' written and oral arguments, the relevant statutory frameworks, and the witness testimony presented, the Court concludes that SIFA does not enjoy governmental immunity because it is not part of the Government of Guam.

## BACKGROUND

Eagle Land Holdings is a legal liability company organized in Guam and the owner of certain real property in Barrigada, Guam. V. Compl. at 1 (Apr. 25, 2024). SIFA is a non-profit corporation organized in Guam, the operator of a public charter school, and the occupant of the aforementioned

real property. *Id.* On April 25, 2024, Eagle Land Holdings filed a Verified Complaint for Unlawful Detainer, Ejectment, Trespass, and Damages ("Verified Complaint") against SIFA. Eagle Land Holdings seeks to eject SIFA from the Barrigada property and to recover $1,576,133.33 in unpaid rent accruing between April 1, 2023 and February 29, 2024. *Id.* at 5.

Eagle Land Holdings alleges that in December 2017, the parties executed a contract titled the "Partnership for Learning Support in Education Through Lease, Utilities, Supplies, and Services Contract," also known as the "PLEASE Contract." *Id.* at 2. The parties agreed that Eagle Land Holdings would serve as a vendor for the charter school's "operational needs," including providing the land for the school's campus. V. Compl., Ex. A at 1. The PLEASE Contract commenced on July 1, 2018, and expired on June 30, 2023. *Id.* at 2.

After the PLEASE Contract expired, SIFA remained on the property as a holdover tenant. On February 7, 2024, Eagle Land Holdings gave written notice that it was terminating the holdover tenancy and demanding SIFA vacate within thirty (30) days. V. Compl., Ex. C. Eagle Land Holdings also demanded arrears payments of over four million dollars ($4,000,000.00), including more than one million dollars ($1,000,000.00) for unpaid holdover rent accruing after June 30, 2023. *Id.* However, SIFA has neither vacated the property nor paid these amounts. V. Compl. at 4.

The Court held an Unlawful Detainer hearing on July 2, 2024, but that hearing did not proceed as planned; instead, SIFA raised an oral challenge to this Court's jurisdiction. SIFA asserted that it is an entity within the Government of Guam and is therefore entitled to claim governmental immunity. *See* Min. Entry at 10:44:33 AM (July 2, 2024). SIFA argued that because Eagle Land Holdings did not file a claim under the Government Claims Act before bringing this lawsuit, SIFA's governmental immunity has not been waived. The Court ordered SIFA to put this argument in writing. On July 9, 2024, SIFA filed its "Memorandum of Points and Authorities in Support of

Governmental Immunity and the Application of the Government Claims Act" ("SIFA Memorandum"). There, SIFA reasserted its claim of governmental immunity and stated that "if [Eagle Land Holdings] continues to dispute SIFA's inclusion as part of the Government of Guam, [SIFA] will provide sufficient evidence at the hearing to establish this fact." *Id.* at 2.

At the hearing on July 31, 2024, SIFA elicited testimony from Evangeline M. Cepeda, the Chairwoman of the Guam Academy Charter Schools Council, about the nature and the funding structure of Guam charter schools. After the hearing, the Court took this matter under advisement.

## DISCUSSION

SIFA argues, in short, that this lawsuit should be dismissed because SIFA enjoys governmental immunity from suit, and that its immunity has not been waived here because Eagle Land Holdings did not first file a claim under the Government Claims Act. *See generally* SIFA Memorandum (Jul. 9, 2024). It is well-established that the Government of Guam "enjoys broad sovereign immunity," *Story-Bernardo v. Gov't of Guam*, 2023 Guam 27 ¶ 12, and that "in order for a suit to be maintained against the Government of Guam <u>and any of its instrumentalities or agencies,</u> sovereign immunity must be expressly waived by duly enacted legislation," *Bautista v. San Agustin*, 2015 Guam 23 ¶ 18 (emphasis added). The Government Claims Act waives sovereign immunity only if the plaintiff has first complied with the procedures prescribed by the Act. *See Guam Police Dep't v. Superior Court (Lujan)*, 2011 Guam 8 ¶ 8.[1] If SIFA were part of the Government of Guam,

---

[1] The Court notes that the Guam Legislature has granted charter schools the power to "sue and be sued in [its] own name." 17 GCA § 12101(c)(8). A statutory "sue and be sued" clause operates as a waiver of sovereign immunity separate from that provided by the Government Claims Act. *See, e.g., Bautista*, 2015 Guam 23 ¶ 28; *Guam Econ. Dev. Auth. v. Island Equipment Co.*, 1998 Guam 7 ¶¶ 8-9. Nonetheless, even when the waiver of immunity is provided by a sue-and-be-sued clause rather than 5 GCA § 6105(a), Government Claims Act procedures still apply. *See Perez v. GHURA*, 2000 Guam 33 ¶ 11. As explained below, however, this issue is effectively moot because ultimately SIFA is not an entity within the coverage of the Government Claims Act.

it would therefore be entitled to demand compliance with Government Claims Act procedures. The Court is not convinced that SIFA is a governmental entity.

### 1. The Government Claims Act Defines the "Government of Guam"

The Government Claims Act defines the "Government of Guam" as "all agencies, departments, instrumentalities, public corporations, and all other entities of the government, no matter how designated, and whether or not such agencies may sue or be sued in their own name." 5 GCA § 6103(a). While this language is broadly inclusive, it is not unlimited. Under the rule of statutory interpretation known as *expressio unius est exclusio alterius*, "if an option is expressed in a law, all other options not expressed were intentionally excluded." *Rinehart v. Rinehart*, 2000 Guam 14 ¶ 9. This canon "has force only when the items expressed are members of an 'associated group or series,' justifying the inference that items not mentioned were excluded by deliberate choice, not inadvertence." *People v. Lau*, 2007 Guam 4 ¶ 12 n.6 (quoting *Barnhart v. Peabody Coal Co.*, 537 U.S. 149, 168 (2003)). The Court draws that inference here and concludes that an entity is within the Government of Guam for purposes of the Government Claims Act *only* if the entity is properly classified as an (1) agency, (2) department, (3) instrumentality, (4) public corporation, or (5) "other entity" of the government.

### 2. GACSA is Silent on the Classification of Charter Schools

The Court first looks to the Guam Academy Charter Schools Act of 2009 ("GACSA"), the enabling statute for all Guam charter schools, to determine whether charter schools fall into any of the aforementioned categories. The Court examines GACSA in light of the Ninth Circuit's decision in *Bordallo v. Reyes*, 763 F.2d 1098 (9th Cir. 1985), which the Guam Supreme Court has cited

approvingly in *Guam Econ. Dev. Auth. v. Island Equip. Co.*, 1998 Guam 7 ¶¶ 6-7. In *Bordallo*, the Ninth Circuit held that the Guam Visitors Bureau ("GVB") was not an "instrumentality" of the Government of Guam because GVB's enabling statute did not explicitly designate it as such. *See id.* at 1103. By contrast, the enabling statute for other governmental entities, such as the Guam International Airport Authority, explicitly used the term "instrumentality." *Bordallo* concluded that "because the Legislature had expressly designated four public corporations as instrumentalities of the government, it did not intend the same characterization to apply to other public corporations, not so designated." *Id.* The *Bordallo* decision therefore suggests that an entity's intended governmental status, if any, should be explicit in its enabling statute.

Applying that logic here, if the Guam Legislature had intended for charter schools to be considered "instrumentalities" (or "agencies," etc.) of the Government of Guam, then GACSA should make that apparent. GACSA, however, is effectively silent on this issue. The words "agency," "instrumentality," and "corporation," do not appear anywhere in the statute. The word "department" only appears in reference to the Guam Department of Education ("GDOE"), which is indisputably a governmental entity. GACSA, however, refers to GDOE primarily to show the distinction, not the similarity, between charter schools and GDOE. *See, e.g.*, 17 GCA § 12107(g) ("An Academy Charter School shall be exempt from [GDOE] policies, rules, regulations, and collective bargaining agreements."). Nothing in the text of GACSA demonstrates that the Legislature intended for charter schools to be viewed as agencies, departments, instrumentalities, or public corporations of the Government of Guam.

That leaves only the possibility that charter schools fall into the amorphous "other entity of the Government" category. But here too, the *Bordallo* case indicates that a governmental "entity" would be so designated in its enabling statute:

because the Legislature had expressly designated four public corporations as instrumentalities of the government, it did not intend the same characterization to apply to other public corporations, not so designated. Consequently, [GVB] <u>was not a governmental entity since it had not been expressly designated as such.</u>

763 F.2d at 1103 (emphasis added); *see also Guam Waterworks Authority v. Badger Meter, Inc.*, 2022 WL 892223 * 6 (D. Guam Mar. 28, 2022) (noting "[t]he purposeful omission of language stating that GWA was 'within" and a part 'of' the government of Guam, alone, seemingly indicates the Legislature's intent to remove GWA from the government of Guam."). As above, nothing in GACSA explicitly designates charter schools as being any sort of governmental "entity," which suggests the Legislature did not intend to confer that status. *Cf. Guam Radio Services, Inc., d/b/a KOKU-FM Hit Radio100 v. GEDA*, 2000 Guam 1 ¶ 33 ("Had the Legislature wanted public corporations to be covered by the Sunshine Act it would have expressly included them in the Act, just as the Legislature expressly included them in the Government Claims Act.").

This is neither surprising nor unreasonable, given that SIFA's relationship with the Government of Guam is not permanent. Under GACSA, each charter school receives its charter only in six-year increments. 17 GCA § 12113(a). Moreover, each charter school is subject to an annual review by the Guam Academy Charter Schools Council to determine whether the school's charter should be revoked. *See id.* Revocation of a charter—and thus revocation of the school's governmental imprimatur—can occur for several reasons, including poor student performance, economic non-viability, or a failure to maintain educational accreditation. *See* 17 GCA § 12114(a)(1)-(6). The relationship between an individual charter school and the Government of Guam, then, is (at least potentially) temporary and tenuous. *See* Geheb and Owens, *Charter School Funding* Gap, 46 FORDHAM URB. L.J. 72, 115 (2019) (noting that " several studies have documented that charter schools 'struggle to amass the fiscal and human capacity' to comply with federal and

state law."). Under these circumstances, the Legislature rationally could have decided not to grant any governmental status to charter schools. The Court is therefore disinclined to supply charter schools with a governmental status.

### 3. Witness Testimony Did Not Establish SIFA is Part of the Government

SIFA's briefing asserted that it would provide "sufficient evidence" to establish that SIFA is part of the Government of Guam. SIFA Memorandum at 2. At the hearing, the Court received testimony from Ms. Cepeda of the Guam Academy Charter Schools Council. Ms. Cepeda's testimony, however, did not convince the Court that SIFA is part of the Government of Guam.

Ms. Cepeda's testimony primary focused on SIFA's funding structure. She testified, for example, that SIFA is funded by an annual appropriation from the Guam Legislature in the amount of $7,500.00 per student, Min. Entry at 10:37:00 AM (Jul. 31, 2024); and that "100%" of the money SIFA receives comes from governmental sources, *id.* at 10:47:10 AM. While this evidence certainly establishes that SIFA is *funded* by the Government of Guam, that fact does not prove that SIFA is an entity *within* the Government of Guam. *See University of the Incarnate Word v. Redus*, 602 S.W.3d 398, 407 (Tex. 2020) ("engaging in an act that serves a public purpose says nothing about the nature of the entity itself."); *Jackson v. New Center Community Mental Health Services*, 404 N.W.2d 688, 692 (Mich. Ct. App. 1987) ("[a] private entity's performance of a governmental function does not confer governmental agency status on that entity."). The mere fact that SIFA receives government funding does not establish it as a governmental entity—otherwise, many government contractors could make a similar claim of being governmental entities. But it is well-established that government contractors are typically not entitled to do so. *See Del Campo v. Kennedy*, 517 F.3d 1070, 1076-81

(9th Cir. 2008) (refusing to extend sovereign immunity to a private contractor in a suit related to the contractor's partnership with a state District Attorney's office).

Ms. Cepeda's testimony also established that once a charter school is established, its actions must go through the "process of government," including transmitting invoices to the Department of Administration for payment. Min. Entry at 10:49:22 AM (Jul. 31, 2024). Additionally, Ms. Cepeda testified that in her view, individual charter schools and Guam Academy Charter School Council are "one and the same," *id.* at 11:09:09 AM, although she later testified that the Council does not involve itself in the "day to day" operations of SIFA, *id.* at 11:27:56 AM. Accordingly, Ms. Cepeda testified that she understands SIFA to be a sub-department of the Guam Academy Charter School Council, which is itself a "line department" under the Guam Department of Administration. *See id.* at 11:12:31 AM. However, Ms. Cepeda also conceded that no provision of GACSA, or any other Guam law, explicitly supports this view. *Id.* at 11:15:13 AM; *id.* at 11:27:11 AM (noting that the Guam Legislature needs to "clear up" the issue). As above, it is the Court's position that nothing in GACSA establishes charter schools as part of the Government of Guam. Ms. Cepeda's opinion testimony on the issue does not alter that position.

In short, while the Court appreciates Ms. Cepeda's extensive testimony, that testimony merely establishes that SIFA is funded, and subject to oversight, by the Government of Guam. But as noted in the *Jackson* case cited above, this does not suffice to confer a governmental status:

> Notwithstanding its performance of a "governmental function" and its reliance on public funding, New Center retains its identity as a nongovernmental entity. Its employees are not county employees. It retains its separate corporate identity and is governed by its own board of directors. Except as it has voluntarily obligated itself by contract, New Center is not required to provide services or to remain in existence. While it may have been created in response to the recognition of mental health needs in Detroit, New Center's creation was not mandated by law.

404 N.W.2d at 692-93. The same is true of SIFA. SIFA was created as a private non-profit corporation and it remains so today. It has its own Board of Trustees who are responsible for SIFA's day-to-day operations. *See* Min. Entry at 11:27:56 AM. While SIFA performs a useful public function, it was not created by the Government of Guam and is not required to remain in existence. Accordingly, the Court is not persuaded that SIFA is a governmental entity.

### 4. SIFA Was Not a Governmental Entity in December 2017

The Court acknowledges that some other jurisdictions have found that charter schools are considered governmental entities, at least in some contexts. *See, e.g., El Paso Education Initiative, Inc. v. Amex Properties, LLC*, 602 SW.3d 521, 529-30 (Tex. 2020) ("We conclude that open-enrollment charter schools act as an arm of the State government. . . ."); *Doe ex rel. Kristen D. v. Willits Unified School Dist.*, 2010 WL 890158 * 7 (N.D. Cal. Mar. 8, 2010) (similar); *see also Drummond ex rel. State v. Oklahoma Statewide Virtual Charter School*, --- P.3d ---, 2024 OK 53 (Okla. 2024) (holding the establishment of religious public charter school illegal and unconstitutional because charter schools are "state actors"). Even if the analysis above is incorrect and SIFA *today* is a governmental entity, SIFA *was not* a governmental entity at the time it executed the PLEASE Contract and agreed to the lease terms relevant to this lawsuit.

Under GACSA, a proposed charter school cannot open until after it files a petition with the Guam Academy Charter School Council and the petition is approved. *See* 17 GCA § 12104(b); 17 GCA § 12105. Such a petition must include "an identification of a facility for the proposed Academy Charter School, including a description of the site where the school will be located." 17 GCA § 12105(i). Before a proposed school receives its charter, it must already have a campus. Ms. Cepeda testified accordingly. Min. Entry at 10:37:00 AM (Jul. 31, 2024). Thus, at the time the PLEASE Contract was executed—that is, when SIFA agreed to lease the land in question—SIFA was still a

purely private entity. It was not yet the operator of a charter school, but merely a local non-profit corporation hoping it would be granted the power to do so in the future. Because SIFA was a purely private entity at the time it agreed to the PLEASE Contract, it would be fundamentally unfair to allow SIFA to use its purported *present* governmental immunity to evade this lawsuit.

### 5. SIFA's Representation by Attorney Phillips

Finally, the Court notes that if SIFA believes it is within the Government of Guam, it is unclear how SIFA could be represented by Attorney Phillips, a private practitioner. In Guam, the Attorney General is required to "conduct on behalf of the government of Guam all civil actions in which the government is an interested party, provided that those branches, departments or agencies which are authorized to employ their own legal counsel may use them instead of the Attorney General." 5 GCA § 30109(c). Some government entities, such as the Guam International Airport Authority, have been granted explicit legislative authorization to employ their own legal counsel. *See* 12 GCA § 1108(c). Nothing in GACSA, however, grants this type of authorization to charter schools, and indeed the Guam Academy Charter School Council is explicitly *required* to use the Attorney General as its own legal counsel. 17 GCA § 12111(f).

If SIFA were part of the Government of Guam, then the government would undoubtedly be an interested party in this action, since it seeks millions of dollars in monetary damages potentially payable through the public treasury. Thus, if SIFA were part of the Government of Guam, the Attorney General—not private counsel—should be arguing on behalf of SIFA. While the Court will not speculate on why the Attorney General has not made an appearance in this case, the Court does find the non-appearance to be a factor suggesting that SIFA is not a governmental entity.

## CONCLUSION

Based on the above analysis, the Court concludes that SIFA is not an agency, department, instrumentality, public corporation, or other entity of the Government of Guam. Accordingly, SIFA is not a governmental entity within the coverage of the Government Claims Act, which means Eagle Land Holdings was not required to file a Government Claims Act claim prior to this lawsuit.

The Court does not lack jurisdiction over this matter, and will proceed to hear the Unlawful Detainer on November 6, 2024 at 3:00 pm.

**SO ORDERED** this 29th day of October, 2024.

HONORABLE JONATHAN R. QUAN
**Magistrate Judge, Superior Court of Guam**